UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| KIMBERLY ANDERSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 3:13-cv-0304 |
| v. ) | Judge Aleta A. Trauger |
| ) | |
| MCINTOSH CONSTRUCTION, LLC, ) | |
| VANTACORE PARTNERS LP, ) | |
| ) | |
| Defendant, ) | |

## MEMORANDUM

Defendants McIntosh Construction, LLC ("McIntosh") and VantaCore Partners LP ("VantaCore") have filed a Motion for Summary Judgment (Docket No. 15), to which the plaintiff, Kimberly Anderson, filed a Response in opposition (Docket No. 21), and the defendants filed a Reply (Docket No. 33). For the reasons stated herein, the motion will be granted.

## BACKGROUND

Anderson worked as a Controller for the defendants from August 2, 2010 through October 7, 2011, when she voluntarily resigned and immediately took another position.[1] During her employment, she had an ongoing contentious relationship with one of her colleagues, an employee named Carol Garza. Anderson found the situation stressful and, on one occasion in March 2011, asked for and received leave to work from home on a single day due to the "stress" that working with Garza had caused her. On October 7, 2011, after she had already lined up another job, Anderson quit, claiming that the stress from working for the defendants was overwhelming.

---

[1] It appears that Anderson formally was employed by McIntosh and that she reported to supervisors at McIntosh and VantaCore. For purposes of the motion, the defendants do not contest that they both should be treated as Anderson's employer under the FMLA.

1

After filing a charge of disability discrimination against the defendants with the Equal Employment Opportunity Commission, Anderson filed a Complaint against the defendants. In her Complaint, she asserted claims under the *Family and Medical Leave Act* ("FMLA") – not the Americans with Disabilities Act ("ADA"). The Complaint did not specify the nature of the FMLA claims.

## PROCEDURAL ISSUES

The defendants have moved for summary judgment on all claims, contending that, for multiple reasons, Anderson cannot establish the elements of an "interference" theory or a "retaliation" theory of FMLA liability. Anderson's response to the motion is a procedural "train wreck."

First, notwithstanding the simple nature of this case, Anderson originally requested leave to file a **44-page** response brief. The court denied the request and ordered Anderson to file a 25-page response. Instead, Anderson filed a **29-page** response with an accompanying request for leave to exceed the court-ordered 25-page limit, which the court (now, to its chagrin) granted. The 25-page response contains 17 pages of "facts," which include (1) a litany of extraneous and immaterial detail regarding Anderson's complaints about the manner in which McIntosh and VantaCore ran its business during her brief tenure; and (2) unsupported *rhetoric* – not facts – often relating to immaterial issues.[2] Moreover, none of this

---

[2] Consider the following "fact" passage contained in the "Factual Summary" section of Anderson's Response, none of which is supported by reference to the record:

> Where is the evidence that [VP Chad Swallows] "any time" looked into the situation? He had one meeting with Anderson and Garza. Where is the evidence that he "gathered more information"? Where is the evidence that he talked to the "opposing party"? (That phrase speaks volumes about his attitude towards Anderson's health conditions and need for leave.) Where is the evidence of these "other sides to the story"? Where was the meeting with Anderson to offer her FMLA starting in August of 2011, even if just intermittently, to remedy the medical issues causing absenteeism? There was no such meeting, because it became their mission to be rid of her prior to her one-year anniversary.

(Docket No. 29 at p. 6; *see also id.* at p. 3 (contained in "Factual Summary") ("The fact that she was forced to resign because the oppressive, hostile work environment was increasingly detrimental to her physical and emotional health and lack of leave, is at the center of this case.

information is presented in a manner that could meaningfully assist the court in resolving whether Anderson's claims meet the standards for a claim under the FMLA. In truth, this material reads like the plaintiff's own recitation of her case against the defendants, unaltered by a lawyer's hand. Plaintiff counsel's failure to excise even a fraction of this material to meet the 25-page limit imposed by the court (already five pages more than the default page limit) is inexcusable.

Second, despite repeated admonitions from this court in multiple cases brought by plaintiff's counsel, he has continued to ignore the rules governing statements of fact that are required or permitted with respect to Rule 56 motions. In response to the defendants' Statement of Undisputed Material Facts, Anderson's submission purports to "dispute" facts without appropriate (if any) citation to the record or without actually disputing the fact. Having combed the record, the court finds that the defendants' cited facts are not in dispute.[3] The exercise of examining these facts, which were not actually in dispute, was a waste of the court's time and resources.

---

Her situation was exacerbated by Garza and by management's disregard for – and blind eye to – Garza's campaign of hostility against her. All the while, Anderson earnestly requested that management take notice: of the untenable circumstances in which she was attempting to function; of the fact that she was increasingly tardy and absent because of her health; that her health had been adversely affected – and was worsening. Those repeated requests were falling on what turned out to be blind eyes and deaf ears.") (lack of citations in original).)

[3] To take one example, Defendants' Fact No. 9 states: "According to Mr. Swallows, the November 29, 2010 meeting provided a forum for Ms. Anderson and Ms. Garza to openly air their issues and discuss them, to clear the air, and to get a clean start." That fact is patently correct: that was Mr. Swallows' testimony. Nevertheless, Anderson's response was as follows:

> Although Plaintiff agrees that that was Swallows' testimony as to the purpose of the referenced meeting, in reality, the meeting was in response to Plaintiff's November 24, 2010, e-mailed request to Swallows that he speak with Garza and let her know that Anderson was responsible for the financials. This transpired because Garza had made a change to October's revenues, after that month had been closed out. And when Anderson requested that that be corrected, Garza refused, saying she first had to see what McMillan wanted to do.
>
> Anderson forwarded Brown her e-mailed request of Swallows, and Brown responded, "This is ridiculous. I can't have you continue to be distracted with this

Also, notwithstanding specific warnings from this court in recent cases, Anderson's counsel filed a statement of *undisputed* material facts, even though Local Rule 56.01 does not permit that type of submission. Instead, Local Rule 56.01(c) permits a plaintiff to file a responsive statement of *disputed* facts in an effort to avoid the grant of summary judgment. For this reason alone, Anderson's statement of facts may be ignored. Moreover, even if the court were inclined to consider it, Anderson's statement of facts is largely composed of (1) immaterial information, (2) facts that are not in dispute, (3) facts that are redundant of information already provided by the defendants in support of their motion, and/or (4) "facts" that blatantly mischaracterize the record. A responsive statement of facts is designed to assist the court in identifying record evidence that establishes a genuine dispute of material fact. This submission does no such thing, and it is not incumbent upon the court to mine the 51-paragraph submission for nuggets of information that conceivably comply with the letter and spirit of Local Rule 56.01. For all of these reasons, the court will not consider the plaintiff's responsive statement of facts in ruling on the motion.[4]

The federal and local rules relating to Rule 56 motions are designed to streamline facts and legal issues for the court's consideration. The submissions by plaintiff's counsel in this and other cases before

---

nonsense. He has 'til Monday, otherwise I'm taking over." After the meeting, on December 1, 2010, Anderson e-mailed Brown of the result, stating, "It was never said that I am in charge of the financial reporting." (Coll. Ex. 4, Bates P0006-0008).

Anderson's response to the defendants' cited fact violates both letter and intent of the federal and local rules: every word after "the Plaintiff agrees that this was Swallows'" testimony – which is what the defendants' stated fact actually asserted – is unnecessary. If the plaintiff contends that the stated fact was *not* Swallows' testimony, then she can "dispute" that fact with appropriate citation to the record. If the plaintiff instead believes that, although Swallows testified about Fact X, Fact X is actually disputed, the plaintiff can file a separate statement of *disputed* material facts in compliance with the rules. Moreover, the two paragraphs of text, even on their merits, are inadequate: they contain numerous statements and characterizations of the evidence, generally without citation to the record. Responses like this, which permeate Andersons' responsive submission, contain information that appears designed to distract from the core facts and issues in the case and do not further the responding party's case in any meaningful way.

[4] Even if the court were to consider that statement, the undisputed facts relied upon by the defendants establish that the defendants are entitled to summary judgment.

4

this court consistently violate both the terms and intent of those rules. Subsequent improper submissions by plaintiff's counsel will, in all likelihood, result in the imposition of sanctions.

**III. Facts**

On August 2, 2010, Anderson began working for McIntosh as its Finance Controller. At the time, her direct supervisor was Robert Brown, who is the Corporate Controller for McIntosh's parent company, VantaCore Partners, LP. Anderson's issues with an employee named Carol Garza began in November 2010. At that time, Anderson informed Brown that Garza would not print reports for her and that Garza would not say hello to her. Anderson also informed Brown and Chad Swallows, who is the Vice President and General Manager for McIntosh, that Garza was uncooperative and unwilling to learn from Anderson or to improve procedures as suggested by Anderson. According to Anderson, her predecessor, Alan Ozane, experienced similar treatment from Garza. Anderson also complained that she did not have control over the Accounting Department.

On November 29, 2010, VP Swallows held a meeting with Anderson and Garza. According to Swallows, the meeting was designed to provide a forum for Anderson and Garza to openly air their issues and discuss them, to clear the air, and to get a clean start.

On February 22, 2011, after experiencing pressure in her arm and chest, Anderson drove herself to a walk-in clinic, from which she was transported by ambulance to the hospital. On February 23, 2011, after determining that she had not suffered a heart attack, the hospital discharged Anderson and advised her to follow a low-salt diet and to stop smoking.

On March 2, 2011, Brown and Swallows held another meeting to discuss Anderson's issues with Garza. Anderson again complained that Garza was being uncooperative and did not want to change. Swallows asked Anderson to provide a written list of her issues with Garza so that they could be addressed. The record contains no evidence that Anderson provided a list to the defendants as they had requested. At any rate, Anderson received a $10,000 discretionary bonus that month.

On April 13, 2011, Anderson had another altercation with Garza. As best the court can discern from the record, the incident concerned either a verbal dispute between Anderson and Garza relating to return of some notes that Garza had provided to Anderson, or a series of confrontational emails that Anderson sent to Garza about Garza's purported refusal to acknowledge Anderson's presence.

Early in Anderson's employment with McIntosh, Brown heard only Anderson's account of the issues, gave her the benefit of the doubt, and tried to support her. Over time, it appeared to Brown that Anderson was making a "big deal" out of issues that were not significant, such as Garza not saying hello to her, or Garza not printing out a report that Anderson had access to and could print herself. In Brown's opinion, this was a situation in which two people did not like each other and could not get along and function productively. Similarly, Swallows testified that Anderson's issues with Garza appeared to be cyclical: in his view, their relationship would seem to improve, and then another issue would arise.

When she was hired, Anderson received a copy of McIntosh's Employee Handbook. Anderson admits that she knew that McIntosh had a Family and Medical Leave Act Policy, as set forth in the handbook. Anderson never filled out any forms requesting Family and Medical Leave, she did not ask anyone at McIntosh for guidance about how to request medical leave under the Family Medical Leave Act, and she did not ask Swallows, Vice President of Sales Mike McMillian, or VantaCore CEO Colin Oerton for medical leave. Brown testified that Anderson did not ask him for medical leave. Anderson also admitted at deposition that she did not have a note from a physician stating that she needed time off from work for any medical reason.

To request leave to work from home or to take a day off from work, Anderson only required permission from Brown. For example, on March 29, 2011, Anderson sent an email to Brown that reads as follows: "I've been averaging working from home one day a week over the last few weeks . . . . This seems to really help me keep my head above water and gives me a MUCH NEEDED break from the constant office chatter and tension I feel from Carol [Garza]. I would like to work from home tomorrow to focus solely on Viewpoint payroll for McAsphalt and do some AP testing as well." Brown granted

6

Anderson permission to work from home on March 30, 2011, as she had requested. Anderson admits that her March 29 request did not seek an indefinite period of time to work from home. Brown testified that this was the only instance in which he recalls Anderson stating that she needed to work from home because of the tension with Garza.

Brown also testified that Anderson made other requests to work from home for reasons *other* than medical issues, characterizing the grounds for her requests as "all over the board." For example, on April 6, 2011, Anderson informed Brown in an email that she would be working from home the following Tuesday because she had "to take [her] 'significant other] to get his kidney stones blasted during the middle two hours of the day."

Anderson is not aware of a single instance in which she requested leave to work from home for medical reasons and was denied, nor is she aware of any instance in which she asked to work from home and was denied the opportunity to work from home at least one day a week. Brown never told her that she could not go to the doctor. For the period from August 2011 to October 2011, Anderson has not presented evidence that she requested leave for medical treatment and was denied.[5]

Brown was not aware of any particular medication that Anderson was taking as a result of stress, although at times Anderson made offhand references to unspecified "new meds." Prior to informing Brown that she was resigning, Anderson did not report to Brown that her doctors had told her that the allegedly "stressful or hostile work environment" was damaging her health.

In either August or September 2011, Anderson applied for a position with Maxwell Roofing. On September 28, 2011, Maxwell Roofing offered Anderson a position as its Controller. Anderson communicated her acceptance of the position to Maxwell Roofing before she resigned from McIntosh.

---

[5] Anderson did not produce any emails from August 2011. With respect to emails she produced from September 2011, Anderson has produced no evidence showing that she needed time off for medical reasons or that she was told she could not have time off. With respect to emails produced from October 2011, Anderson has produced no evidence showing that she requested medical leave or that she was told she could not take medical leave. Furthermore, Anderson testified that she cannot think of any phone conversations or verbal communications in which she asked for time off for medical reasons in August, September, or October 2011 and it was denied.

On October 5, 2011, Anderson resigned from McIntosh. Brown accepted her resignation, and Anderson's last day with McIntosh was October 7, 2011. She began working as the Controller for Maxwell Roofing on October 17, 2011. She did not take a medical leave of absence from Maxwell Roofing in October or November of 2011.

At deposition, Anderson testified that physician Dr. Jill Millspaugh had told her that she needed to leave her job at McIntosh because of the stress. On August 17, 2011, she called Dr. Millspaugh's office requesting a refill on her medication. Because she requires an appointment before she provides refills, Dr. Millspaugh scheduled an appointment for Anderson on August 18, 2011. That was Anderson's only appointment with Dr. Millspaugh for the period from August 2, 2011 through October 7, 2011 (her last day at McIntosh). Dr. Millspaugh's notes from that appointment contain no discussion related to stress at work, need for medical leave, requests for medical leave, or hostility from co-workers.

## **RULE 56 STANDARD**

Rule 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (2014). At the summary judgment stage, the moving party bears the initial burden of identifying those parts of the record that demonstrate the absence of any genuine issue of material fact. *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). However, if the moving party seeks summary judgment on an issue for which it does not bear the burden of proof at trial, the moving party may meet its burden by showing that there is an absence of evidence to support the non-moving party's case. *Id.* (citing *Celotex*, 477 U.S. at 325). "When the moving party has carried this burden, 'its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Id.* (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89

L. Ed. 2d 538 (1986).) The non-moving party also may not rest upon its mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial. *Id.*

At this stage, "'the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Moldowan*, 578 F.3d at 374 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the nonmoving party." *Moldowan*, 578 F.3d at 374 (citing *Matsushita*, 475 U.S. at 587). But "[t]he mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient," *Moldowan*, 578 F.3d at 374 (quoting *Anderson*, 477 U.S. at 252), and the non-movant's proof must be more than "merely colorable." *Anderson*, 477 U.S. at 249. An issue of fact is "genuine" only if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Moldowan*, 578 F.3d at 374 (citing *Matsushita*, 475 U.S. at 587).

## ANALYSIS

### I. The FMLA

The FMLA affords an employee up to twelve weeks of leave within a twelve-month period, if the employee suffers from "a serious health condition that makes the employee unable to perform . . . functions of . . . [her] position," among other qualifying reasons. 29 U.S.C. 2612(a)(1)(D). The FMLA requires an employee to be employed for twelve months before becoming eligible for FMLA leave. *Id.* § 2611(2)(A)(i). Anderson concedes, as she must, that she was not eligible for FMLA leave until August 2, 2011, one year from the date that McIntosh hired her. Therefore, the relevant time period is August 2, 2011 through October 7, 2011, when she quit. In other words, the relevant time period is just over two months.

Under the FMLA, an employer may not (1) "interfere with, restrain, or deny the exercise of any attempt to exercise any right provided by the FMLA" (referred to as an "interference" theory of liability), or (2) "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter" (referred to as a "retaliation" theory of liability). 29 U.S.C. § 2615(a)(2); *see Mendel v. City of Gibraltar*, 727 F.3d 565, 568 (6th Cir. 2013). It is not entirely clear what theory or theories Anderson has pursued in this case – indeed, the facts lend themselves to neither theory. Nevertheless, in the interest of completeness, the court addresses both theories herein.

## II. Interference Theory

To establish an interference claim, a plaintiff must make a *prima facie* showing that (1) she was an eligible employee, (2) the employer is a covered employer, (3) she was entitled to leave under the FMLA, (4) she gave the employer notice of her intent to take leave, and (5) the employer denied her FMLA benefits to which she was entitled. *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003).[6] To show that she was entitled to leave under the FMLA, a plaintiff must show by a preponderance of the evidence that she suffered from a "serious health condition," which is "an illness, injury, impairment, or physical or mental condition that involves . . . (A) inpatient care in a hospital, hospice, or residential medical facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11); *see also Bauer v. Varity Dayton-Walther Corp.*, 118 F.3d 1109, 1112 (6th Cir. 1997). To the extent Anderson asserts an interference claim, she cannot establish her *prima facie* case for multiple independent reasons.

First, Anderson has not shown that she suffered from a "serious health condition" during the relevant time frame, which is August 2 to October 7, 2011. Under the applicable regulations, she must show that "an illness, injury, impairment, or physical or mental condition that involves . . . (1) [a]ny

---

[6] Interference claims proceed under the *McDonnell Douglas* burden-shifting framework. *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 427 (6th Cir. 2014). Here, because Anderson cannot establish her *prima facie* case, the court need not conduct a pretext inquiry.

10

period of incapacity or treatment in connection with or consequent to inpatient care . . . in a hospital, hospice, or resident medical care facility; (2) any period of incapacity requiring absence from work, school, or other regular daily activities, of more than three calendar days, that also involves continuing treatment by (or under the supervision of) a health care provider; or (3) continuing treatment by (or under the supervision of) a health care provider for a chronic or long-term health condition that is incurable or so serious that, if not treated, would likely result in a period of incapacity of more than three calendar days…" 29 C.F.R. 825.114(a). Failure to show a "period of incapacity" under the regulations is fatal to a plaintiff's claims. *See Bickford v. Life Care Am.*, 2009 WL 77455, at *1 (E.D. Tenn. Jan. 8, 2009); *Bond v. Abbott Labs.*, 7 F. Supp. 2d 967, 973 (N.D. Ohio 1998).

In her response, Anderson does not identify which of the three "serious health condition" categories is pertinent here, nor does she make any meaningful attempt to apply the facts of her case to the law.[7] She has essentially waived any argument on this point. At any rate, during the relevant time frame, Anderson did not receive inpatient care, she did not have any period of incapacity requiring her to leave work for more than three calendar days pursuant to treatment from a healthcare provider, and she has not presented evidence showing that she suffered from a condition that, if not treated, would likely have resulted in a period of incapacity of more than three calendar days. Indeed, she had just one medical appointment during the relevant time to obtain a prescription refill. The records related to that appointment contain no reference to remaining off of work, needing medical leave, requesting medical leave, or that she was even experiencing stress requiring her to work from home. Furthermore, Anderson does not address, let alone contest, the defendants' position that, even if she were suffering from a

---

[7] She simply points out that (1) her supervisor found her "sobbing heavily" one day in November 2010 – nearly a year before she became eligible for FMLA leave – which she attributed, at the time, to "stress, animosity, and tension"; (2) in March 2011, approximately six months before the relevant time period, a doctor noted that she had experienced depression and suicidal ideation; and (3) in May 2011, two months before the relevant time period, a doctor noted that she was still suffering from depression and that she "[h]ates job, looking for alternate." Anderson does not explain how these facts relate to the applicable legal standard.

11

debilitating condition, she was not "incapacitated" because she was able to perform work from home. *See Whitworth v. Consolidated Biscuit Co.*, 2007 WL 1075774, at *10 (E.D. Ky. Apr. 6, 2007).

Second, Anderson cannot show that she suffered from a "serious health condition" under the FMLA. To invoke the protections of the FMLA, a plaintiff must "request leave and give the employer notice that [s]he s requesting such leave for a serious health condition that renders [her] unable to perform [her] position's duties." *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 421 (6th Cir. 2004). Whether the notice provided adequately apprises the employer that the employee needs leave for an FMLA-qualifying reason is a question of law for the court. *Cavin*, 346 F.3d at 723. "[T]he critical test for substantively sufficient notice is whether the information that the employee conveyed to the employer was reasonably adequate to apprise the employer of her request to take leave for a serious health condition that rendered her unable to perform her job." *George v. Russell Stover Candies, Inc.*, 106 F. App'x 946, 949 (6th Cir. 2004).

Here, Anderson has not shown that she requested or needed time off from work for health reasons during the relevant time frame. At most, she has presented evidence that (1) she occasionally asked for, and received, permission to *work from home*, often for reasons having *nothing* to do with her own health; and (2) in February 2011, six months before the relevant time frame, she was transported to the hospital for chest pains. The only request she has identified that specifically related to "tension" caused by Garza is a March 2011 email to her supervisor (five months before the relevant time frame), in which she asked *to work from home* on a single day – and her supervisor granted the request. The undisputed facts show that she never asked for FMLA-qualifying medical leave orally or in writing during the relevant time frame. And her March 2011 complaint about stress in the workplace did not suffice to place McIntosh on notice that she would need to take leave for a "serious health condition" between August and October 2011 – a period beginning nearly six months later. *See Gutierrez v. 78th Judicial Dist. Ct.*, 2009 WL 2584748 (W.D. Mich. Aug. 18, 2009). In sum, the undisputed facts show that she did not apprise the defendants that she could not perform her job without taking leave for a serious health condition.

Third, Anderson has not shown that she was denied any benefits to which she was entitled. Anderson failed to respond to this argument in her response brief, which effectively constitutes waiver. Regardless, she has not identified any evidence that she requested and was denied leave between August 2 and October 7, 2011.

In sum, Anderson cannot show an interference claim for each of these three independent reasons. Because she cannot establish a *prima facie* case, the court need not undertake a pretext analysis.

### III. Retaliation

To establish a *prima facie* case of retaliation, a plaintiff must show: (1) she engaged in activity protected by the FMLA; (2) that this exercise of her protected rights was known to the defendant; (3) that the defendant thereafter took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action. *Arban v. W. Publ'g Corp.*, 345 F.3d 390, 404 (6th Cir. 2003). Anderson cannot meet her burden to establish any of these elements.

First, as explained in the previous section, Anderson cannot show that she exercised any rights under the FMLA in the first place. Second, also as explained in the previous section, Anderson cannot show that any (purported) exercise of protected activity was known to the defendants. *See Gipson v. Vought Aircraft Indus., Inc.*, 387 F. App'x 548, 557 (6th Cir. 2010). Third, Anderson did not suffer an adverse employment action: she quit her position voluntarily in favor of taking a different job that she had already accepted. *See Carmen v. Unison Behavioral Health Grp.*, 295 F. Supp. 2d 809, 815 (N.D. Ohio 2003) (citing *Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 447 (6th Cir. 1999)). Furthermore, to show "constructive discharge," Anderson is required to show that "working conditions would have been so difficult or unpleasant that a reasonable person in [her] shoes would have felt compelled to resign." *Carmen*, 295 F. Supp. 2d at 815. Anderson cannot make that showing: she has not identified competent evidence relating to the relevant time frame that indicates that working conditions at McIntosh satisfy this

standard.[8] Fourth, Anderson cannot show any "causal connection" between the alleged protected activity and the working conditions at McIntosh that allegedly drove her to quit. At most, the record shows that the defendants internally discussed posting Anderson's position for rehire in the summer of 2011. Anderson does not explain how this fact meaningfully establishes a "causal connection" to her working conditions. For each of these reasons, she cannot establish a retaliation claim.[9]

In sum, Anderson's claim under the FMLA, whether construed as an "interference" claim or a "retaliation" claim, fails as a matter of law. Anderson's meandering response brief details a litany of largely unfocused complaints about working for the defendants, the bulk of which relate to her disputes with Garza. Anderson fails to show how these facts relate to a viable interference theory or retaliation theory of liability under the FMLA. Having examined the papers, the defendants may be correct that Anderson sued under the wrong statute: at least superficially, the facts suggest that Anderson at times may have sought an accommodation for a perceived disability (her stress and related symptoms), *not* to exercise rights under the FMLA. Indeed, as discussed above, Anderson's case does not fit within the FMLA's protections.

## CONCLUSION

For the reasons stated herein, the defendants' Motion for Summary Judgment will be granted and Anderson's Complaint will be dismissed with prejudice.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

---

[8] As the defendants point out in their Reply, Anderson's response on this point obscures and mischaracterizes the record, cites to immaterial evidence, and is essentially incoherent.

[9] Even if Anderson could establish each element of her *prima facie* case, Anderson could not establish pretext.

14